J udge Owsley
delivered the Opinion of the Court.
John Tanner, whilst residing in the Territory of Louisiana, and District of Cape Girardeau, brought two actions at law, against Moore, in the circuit court of Caldwell county, in this State; and at the June term of 1812, of that court, recovered judgment in each case, for six hundred and sixty-six and two-thirds dollars and cost.
Moore then exhibited his bill in equity, with injunction, against the judgment at law; and executed to the said John Tanner, an injunction bond, in pursuance to the order of court, and the requisitions of law, on the 9th day of July, 1812. John Tanner, afterwards, on the 15th day of August, 1812, departed this life, in the territory of Louisiana. At the time of his death, Tanner had no estate of any sort in this State, except the two judgments which he had recovered in the circuit court of Caldwell, against Moore. A few days after Tanner’s death, his widow, Sally Tanner, brought all the negroes and *43 other effects belonging to the estate of the decedent, to the county of Caldwell, in this State, and presented to the court of that county', for probate, a paper purporting to be the last will and testament of her deceased husband. The paper hears date the 25th day of June, 1812, and was partially proved before the county court oí Caldwell, at the October term, 1812; and at the December term of the same year, was fully proved and admitted to record, as the last will of John Tanner, dec’d. Sally Tanner, the widow, who is named an executrix in the will, at the same term appeared in court, and in the mode required bylaw, took upon herself the office of executrix.
An additional injunction bond is given by Moore; suit is decided against him, and the executrix recovers a judgment on the injunction bond.
Scire facias on the original judgment, in the name of JamesTanner, claiming-to be administrator of the dpceitent.
Facts argued, on the trial.of.the scire facias
*43 After ibis, an additional injunction bond appears to have been executed to her by Moore; and the suit which Moore had brought in equity, to be relieved against the judgments which John Tanner had recovered in his lifetime against him, progressed until, finally, in May, 1819, the circuit court .of Caldwell pronounced a decree, dissolving the injunction, and dismissing the bill, with damages and cost. About the first of January, 1822, Moore páid one thousand one hundred and fifty dollars, part of the amount due upon the injunction bond; and suit having been brought upon the bond by the executrix, Sally, and Zadoch Thomas, with whom she had intermarried, against Moore; such proceedings was therein had as at the March term, 1824, of the Caldwell circuit court, j udgment was recovered against Moore for eleven hundred and ninety dollars and thirty-one cents and costs, being the amount due upon the injunction bond after deducting the amount paid by Moore.
Before this, however, to wit: On the fifth day of September, 1825, James Tanner, who styles himself administrator with tin? will annexed, of the estate of the said John Tanner, deceased, sued out from the Clerk’s office of the Caldwell circuit court, a scire facias against Moore, to revive and have execution of one of the judgments recovered by the said John, in his lifetime, against Moore.
Upon the trial of the scire facias, which was had at the March term, 1824-, the foregoing facts, together *44 With such as we shall hereafter mention, were argued by the parties, and the law arising from the facts submitted to the decision of the court. In addition to the facts mentioned, it was agreed that the pretended will, which was afterwards admitted to record in the county court of Caldwell, was, within |wo or three days after the death of John Tanner, presented by his widow, Sally Tanner, to the Judge of Probates in Louisiana, where the said John resided at the time of his death, and that the said Judge rejected the same, and refused to admit it to record; and that the said Sally thereupon presented to the said Judge another will of the said John Tanner, which was received by the Judge, proved and admitted to record. This will is dated the 30th of August, 1810; and all the persons named as executors therein, (among whom is Sally Tanner,) having neglected to take upon themselves the execution of the will, administration with the will annexed was afterwards, on the 26ph of November, 1821, by the county court of Cape Girardeau, State of Missouri, granted to James Tanner; who filed with the Clerk of the Caldwell circuit court his letters of administration before the scire facias was sued out. When the will was provecí and recorded in the county court of Caldwell, Sally Tanner concealed from that court the facts in relation to the proceedings before the Judge of Probates in Louisiana; but before- Moore made any payment he was informed by James Tanner, that Sally Tanner was not the rightful executrix; and that, as administrator with the will annexed, he was entitled, as the rightful and duly qualified representative of John Tanner, deceased, to receive the money. Upon the foregoing facts, it was agreed that judgment should be entered, either for the one party or the other, for part, or the whole demand, as the co i rt might decide the law.
Reference the laws of Louisiana,
*44 .The court was of opinion that Sally Tanner had no legal right to receive payment from Moore, and rendered judgment in favour of James Tanner, that he have execution, &c.
We have omitted to set out the law of Missouri, concerning last wills and testaments, which is contain,’ *45 .eel in the agreed cause, and we have done so, because the decision about to be given would be the same, whatever might be the construction put upon that law. The only object which the plaintiff in the below, could have had in view, by introducing into the agreed case that law, was to prove, that the paper purporting to be the last will and testament of John Tanner, deceased, which was admitted to record in the county court of Caldwell, and whiclf had been previously rejected by the Judge of Probates in Louisiana was, in point of law, not the last5 will and testament of John Tanner, deceased; and without stopping to give a construction to that law, it may be consided that the Judge of probates was correct in pronuncing judgment of condemnation against the will. But when this is conceded, it does not follow that the defendant, Moore, cannot protect himself against the plaintiff’s action, under the payment which he is admitted to have made to Sally Tanner, the executrix named in that will, and to whom probate thereof was granted by the county court of Caldwell.'
One suing as executor and mentary of a court having cannot*be re* sisted by proving the thatteL tatormade another tes*ame"ni|’ hn<J another executor—
If not the legal will of John Tanner, deceased the county court, no doubt, erred in admitting it to record, and in granting probate to Sally Tanner; bat an error of that sort, should not, we apprehend, go to exclude the debtor of the testator, Tanner, from availing himself of any payments made to the executrix, before a repeal of the grant of probate. The grant of probate is a judicial act, and when done by a court, of competent jurisdiction, is, until repealed, conclusive in all other courts. Thus, in Toller’s Jaw of executors, pagé 76, it is said— ■“■So long as the Probate remains unrevoked, the seal of the ordinary cannot be contradicted; for the temporal court cannot pass a judgment respecting a will, in opposition to that of the ecclesiastical court; and therefore, if a probate under seal be shewn, evidence will not be admitted, that the will was forged, or that the execution of it was procured by fraud, or that the testator was non compos mentis, or that another person was executor; for these are points which are exclusively of spiritual cognizance.” Again, in page 77, the same author says — ‘*it has been deter *46 mined, that payment of money to an executor, who had obtained Probate of a forged will, was a discharge of the debtor of the intestate, although the probate was afterwards revoked, and administration granted to the next of kin,”
—If, in such e;t«>, tho court had not jusisdiction becausetho testator was stili living, oil for other cause, that way be show: and tho letters are nought.
I .otters testaínontary obtained of the proper tribunal in a state will not entitle the administrator to sue in the district of Columbia.
, when UuT lotters testamentary are rtfrn-m'rnnn try.
We are aware that authority may be found, going to prove, that payment of money under probate, of a supposed will, of a living person, would be void; but why void? The reason is, that, the ecclesiastical court in England, had no jurisdiction over the wills of living persons; and of course, tire grant of probate in. such a case, would neither confer right, or conclude any one in other courts. But over the wills of deceased persons, the ecclesiastical court had jurisdiction; and whenever that jurisdiction was exercised, by granting prpbate of a wili of a dead person, though the will he forged, or the probate be obtained through fraud, or the like, the probate was conclusive, until revoked; and by a payment to the executor, the debtor of the testator was discharged. The validity of the payment, which was made by Moore to the executrix named in the will that was admitted to probate in the county court of Caldwell, in this state, must, therefore, depend upon the question, whether or not that court possessed jurisdiction over the will.
This question we understand to have been in effect decided in the affirmative by the Supreme Court of the United States. In the case of Fenwick against Sears’ administrators, it was held by that court, that an administrator, having had letters of administration in Maryland, before the separation of the District of Columbia from the original States, cannot, after that separation, maintain an action in that part of the District ceded by Maryland, by virtue of those letters of administration, but must take out new letters within the District. 1 Cranch 259.
And the same court, in the case of Dixon’s exocul°rs against Ramsey’s executors, decided, that an ex-editor cannot maintain a suit in the District of CoJumbia, upon letters testamentary granted in a foreign country. 3 Cranch319. After adverting to the distinction, wnich appears to have been taken in *47 argument, in that case, between an executor and an administrator, Chief Justice Marshall, By whom the opinion of the court was delivered, remarks: “This distinction does certainly exist; but the deduced from it, does not follow. If an executor derived from the will of his testator, a power to maintain a suit, and obtain a judgment for a debt due to his testator, it would seem reasonable that lie should exercise that power, whenever the authority of the will was acknowledged; hut if he maintains the suit by virtue of his letters testamentary, he can only sue in courts to which the power of those letters extends. It is not, and cannot be denied, that he sues by virtue of his letters testamentary; and, consequently, in this parliculer, he comes within the principle which was decided by this court, in the case of an administrator.”
Statute authorizing the tora andexécutors, whose totters are other StaTes -where the decedent died, su0 her°i fe^uhe jurisdiction of our connty courts to grunt administration, ór letters testamentary.
*47 Now, if it he true, and that it is we entertain no doubt, that an executor sues, by virtue of his letters testamentary, and that those letters must he obtained from the courts of the country where suit is brought, it follows that the county court of Caldwell, where the judgment was recovered by Tanner, in his lifetime, had jurisdiction to grant probate of his will. For the laws of this country are sufficiently comprehensive to confer jurisdiction in all testamentary matters upon the courts of the county where the estate of the testator may he, though he reside and die out of the state; and as, according to the decision of the Supreme Court, letters testamentary must be obtained from the court of this state, to enable the executor to sue here, it was competent, and proper for the county court of Caldwell, to take jurisdiction of the matter.
We have not forgotten that by an act of the Legisture of this state, executorswho obtain letters testamentary in any other state, are now allowed to sue in this state without obtaining letters testamentary from a county court here, and the preceding remarks have been made exclusively in reference to the law as it stood before the passage of that act. But we do not admit that by the provisions of that act the county courts of this country have been ousted of any part of their jurisdiction over testamentary matters". The *48 right of suit which that act- has given to executors', upon letters testamentary granted in other states, is merely cumulative, leaving to the county courts ali the power and jurisdiction which they previously possessed over such subjects. The county court may, notwithstanding the provisions of that act, grant prohate, of wills in all cases where it would have been before competent for them to do so, and when granted, the executor has the same power that he would have possessed if the act had never passed.
Taymcnt to an executor of a will of a residentofanother State, who proved the will here, in the court of the county wherejudgjuont had been rendered for the'deblyn the testa ior’s name, is a sufficient discharge, tho’ the will was forged, and the true will had been proved where the decedant last resided, and letters testamentary granted them.
■Where probate of the will of a decedant of another State is granted to an executor in the county where the testator had recovered a judgment, ho, and notone to whom letters of administration with another will annexed, granted where the testator resided and died, can maintain an acCimiu tin • Statu.
*48 After the county court of Caldwell acted upon the subject, and granted probate of the will and letters testimentary to Mrs. Tanner, it was not competent for Moore to contest her authority to receive the money which he was owing the testator, and for which she had brought suit against him; and as her authority to sue for and receive payment of the money has never been revoked, be should not, and cannot be again compelled to pay what he was compellable to pay and has actually paid to her.
Were there, therefore, no other objection to thé judgment of the court below, it was undoubtedly’ erroneous not to allow a credit to Moore for the amount which he has paid to the executrix, to whom letters testamentary were granted by the county court of Caldwell.
But we arc not of opinion that judgment should have been rendered against Moore for any thing, in favour of the plaintiff in the court below. We have seen that judgment had been recovered against him, by the executrix to whom letters testamentary had been granted by’ a court of this country possessing competent jurisdiction to grant probate of the will, and if judgment for any amount should be recovered in this case by the plaintiff in the court below, how, it may be asked, is Moore to be relieved from the payment of either j adgment ? So long as the letters testimentary’, which were granted by the court of this country, are unrevoked, Moore is not at liberty to controvert the authority of the executrix to receive payment of the debt which he is owing to the estate of the testator; and if so, upon what prin *49 eróle is it that the collection of the judgment which she has recovered against him could be prevented, even were judgment recovered against him in this are also? For the amount, which Moore has paid the executrix, he most clearly cannot he liable to tlie plaintiff who brought this action in the court below, ard if not liable to another for the amount paid the executrix, why should, he be liable ior that which is not paid her, but which she may hereafter compel him to pay? If he be liable to tbe action of the plaintiff in this cace, It would, therefore, seem that his liability cannot proceed from any principle of natural justice, but must result from some stern and inflexible rule of law. No such rule of law is, however, believed to exist.
The statute allowing c-ecutors of other Statos to sue hero, applies only where there aro no letters testamentary or of administration granted by a county court of this State,
Were it not for the 'act of this state, allowing persons to whom administration of deceased persons estates are granted by the courts of other states to sue in tlds country, the plaintiff in the court below could not maintain his action, though no probate of the ■will of the testator had ever been granted by the county court of Caldwell; and we understand that act not to authorize a suit by an executor, or administrator, upon letters testamentary, or letters of administration granted in another state, after the courts of this country have acted upon the subject and granted such letters. It is true the act has not used language which in express terms limits the right of executors and administrators, upon letters testamentary, or letters of administration, obtained from the courts of other states, to sue in this state only where there is no grant of such letters testamentary, or letters of administration, by the courts here; but by adverting to the old law, the mischief, and the remedy, it will be perceived that by passing the act the object of the legislature was to authorise suit upon foreign letters of administration, or letters testamentary, when there should he no person possessing authority under a grant from the courts of this country to sue in right of the testator or intestate; and by limiting the operation of the act to cases of that sort, we shall not only avoid many difficulties and hard-. ships, to which debtors by a different construction, would inevitably be exposed, but we shall, morco *50 ver, conform to what we understand to have been the intention of the legislature in passing the act.
.Haggin for plaintiff; Crittenden for defendant.
The judgment must, therefore, be reversed, with cost, the cause remanded to the court below, and judgment there entered, in favour of Moore, in conformity with this opinion.